## In the Matter of the Estate of NELLIE QUENZER, Deceased.

Surrogate's Court, Kings County, September 20, 1934.

*Samuel Saline*, for the petitioner.

*Reeves, Todd, Ely & Beaty*, for Evelyn Bossong, executrix.

WINGATE, S. This is an application by one of two residuary legatees and executrices for a " substantial " distribution of assets in the estate. Eight months have expired since the issuance of letters, and the allegations of the petition, which in this respect are not controverted, indicate that the assets in the hands of the fiduciaries consist of $47,618.50 in cash, $92,630.21 in stocks and other securities, and $19,220.67 in miscellaneous other allegedly good items, making a total of assets of $159,469.38. Aside from executorial commissions and attorneys' fees which are not fixed in the opposing papers, the obligations of the estate consist of $10,459.69 of listed claims, of which $6,250 represents a claim presently in litigation, and estimated balances of $2,004.55 for State and Federal estate taxes, making a total of $12,464.24.

If this demonstration represented all of the pertinent facts, there would appear to be no reasonable justification for a failure of the executrices voluntarily to distribute at least $20,000 of the cash and the security items of $92,630.21 which are substantially

all divisible in kind. The records of the court, however, demonstrate that almost from the moment of qualification, these sister-executrices-residuary legatees have indulged in an unusually acrimonious series of altercations, and on the present application the respondent gives notice of an intention to continue this procedure on the final accounting by attempts to surcharge her sister and coexecutrix for various alleged acts and omissions.

The applicant alleges indigence as one of the bases for the relief sought and her counsel insists that were the court to impose as a condition of a direction for partial distribution that she file the usual bond contemplated in the last paragraph of section 217 and in section 221 of the Surrogate's Court Act, it would be extremely difficult if not impossible for her to comply with this requirement.

The question, therefore, arises as to the propriety or obligation of the court either to grant the relief sought or to interpose itself as a buffer between these bitterly warring antagonists. The possibly pertinent provisions of the Surrogate's Court Act are sections 217, 218 and 221.

Section 221 in nowise aids the situation of the present applicant, since relief thereunder is expressly conditioned on the filing of a bond.

Section 218 grants a legatee or distributee no affirmative rights, but merely inhibits an executor from paying a distributive share within the time specified.

Section 217, therefore, alone remains for consideration. This provision first appeared in the general revision of the laws accomplished by chapter 443 of the Laws of 1914. Whereas amendments to the section then enacted were effected by chapter 121 of the Laws of 1918 and by chapter 203 of the Laws of 1922, these are immaterial for present purposes.

Prior to the original enactment, the only relief available to an unpaid creditor or legatee was under former section 2722 of the Code of Civil Procedure which permitted a creditor to apply for payment upon the expiration of six months after grant of letters, and one entitled to a distributive share, after one year. Under that practice, relief was conditioned, among other things, on the filing of a bond (former Code Civ. Proc. § 2723). At that time section 2726 provided that an estate fiduciary could not be compelled to account until the expiration of a year from the grant of letters.

This latter provision was altered in the general revision of 1914 so that an accounting could be required within fifteen days after the time to present claims had expired or within one year in any event.

In view of this alteration in the law, the Committee on Revision made the following observations in respect to the enactment of

the new section 2687 which was subsequently carried forward into section 217 of the Surrogate's Court Act: " Former section 2722 is to be repealed because with a judicial settlement possible in about six months, or at the end of a year at the longest, the provision for application for payment of debts seems useless,— application for an accounting should be made. Every representative should advertise for claims, but as some will not, this section has been written to afford relief in such cases, and incidentally in cases where specific property has not been delivered. If the representative sees fit not to advertise for claims, he ought to be ready to pay any just claims at the end of three months."

The intent of the Commission on Revision of the law, which is imputable to the Legislature (*Am. Historical Soc.* v. *Glenn*, 248 N. Y. 445, 451, 452; *People* v. *Schweinler Press*, 214 id. 395, 404; *Matter of Greenberg*, 141 Misc. 874, 882; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Sitkin*, 151 Misc. 448, 456, 457; *Matter of Miranda*, Id. 459, 460), is obvious from this note. The remedy provided by the section was intended for use only in those extraordinary situations where no other remedy was available against the fiduciary and he had been derelict in the performance of the acts necessary to give the claimant a right of action prior to the expiration of more than a year from the date of his qualification. The remedy was clearly not in substitution for the right to require a compulsory accounting, since it was denied claimants in any estate where the executors by advertisement had made it possible for claimants to enforce their rights by this process within a period deemed reasonable by the Commission and the Legislature.

By the changes effected in the revision of the laws in 1931,* in consequence of which a judicial settlement can be compelled upon the expiration of seven months after the grant of letters even without advertisement for claims, which is substantially the same period as existed under the former law where advertisement was made, the section has become substantially anachronistic, and a case would indeed be rare where the surrogate would be authorized in exercising his discretion to direct payment of a distributive share without the giving of a bond. If the application were made prior to the expiration of the seven months' period in which no compulsory accounting could be demanded, it would seldom be just to possible creditors to place the payment of their claims in jeopardy by authorizing an unconditioned distribution, and subsequent to that time the proper remedy to pursue would be a compulsory accounting and not an application under section 217.

---

* See Laws of 1931, chap. 562.

Whereas the reasons alleged in the petition as to why an accounting as to transactions thus far completed should not be had at this time possess a certain amount of cogency on the question of convenience, they by no means demonstrate that this remedy is unavailable or improper, and if interposed by a respondent on an application in a compulsory proceeding would unquestionably be held insufficient. The proper remedy of the applicant is for a compulsory judicial settlement if her coexecutrix remains recalcitrant.

For the reasons stated, the court, in its discretion, denies the present application, without costs.

Proceed accordingly.